UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VERONICA V.O.[1], | |
| Petitioner, | No. 1:25-cv-01796-TLN-JDP |
| v. | **ORDER** |
| KRISTI NOEM et al., | |
| Respondents. | |

This matter is before the Court on Petitioner Veronica V.O.'s ("Petitioner") Ex Parte Motion for a Temporary Restraining Order ("TRO"). (ECF No. 8.) For the reasons set forth below, Petitioner's Motion is GRANTED.

///

///

///

---

[1] As recommended by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court omits Petitioner's full name, using only her first name and last initials, to protect sensitive personal information. *See* Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Petitioner is a forty-nine-year-old native of Mexico. (ECF No. 1 ¶ 15.) Petitioner first entered the United States in 1989 when she was thirteen years old "without inspection." (*Id.* ¶ 17.) Petitioner returned to Mexico in 1993. (*Id.*) Petitioner subsequently tried to re-enter the United States through a port-of-entry using her identification card but was not permitted to enter. (*Id.*) Petitioner later attempted to enter the United States again with her identification card and was allowed to enter on the second attempt. (*Id.*) In 1996, Petitioner pled *nolo contendre* to a violation of California Health and Safety Code § 11352(a), transportation of a controlled substance.[2] (*Id.* ¶ 16.) She remained in the United States until 2011 when she decided to return to Mexico. (*Id.*)

In 2014, Petitioner received death threats from the Arellano Felix Cartel and fled Mexico in fear for her life. (*Id.* ¶ 18.) Petitioner served five months in prison for violation of 8 U.S.C. § 1325 — improper entry by a noncitizen — and was placed in removal proceedings. (*Id.*) Petitioner applied for asylum. (*Id.*) On December 5, 2015, Petitioner was released from U.S. Immigration and Customs Enforcement ("ICE") custody on a $3,500 bond. (*Id.*; ECF No. 1-2.)

On February 24, 2017, Petitioner received a final order of removal. (ECF No. 1 ¶ 18; ECF No. 1-1.) The immigration judge denied Petitioner's application for asylum and withholding of removal but granted deferral of removal under Article III of the Convention Against Torture with respect to Mexico. (ECF No. 1-1.) Petitioner was provided with an ICE Order of Supervision. (ECF No. 1-3.) Since then, Petitioner has resided in the United States and abided by her Order of Supervision without incident. (ECF No. 1 ¶ 18.) During this time, Petitioner has been lawfully employed, paid her taxes, and raised three children, all of whom are U.S. citizens. (*Id.* ¶¶ 1, 18.) One of Petitioner's children is a nuclear mechanic in the Navy who is reliant on Petitioner. (*Id.* ¶ 19.) This reliance is the basis for Petitioner's November 14, 2025 application to U.S. Citizenship and Immigrations Services for deferred action to prevent her detention or deportation to any country. (*Id.*) The application remains pending. (*Id.*)

---

[2] Petitioner recently filed a motion to vacate her 1996 conviction based on prejudicial error. (ECF No. 1 ¶ 16.) A hearing is currently scheduled for December 19, 2025. (*Id.*)

1    On September 17, 2025, ICE detained Petitioner at her regularly scheduled annual check-in. (*Id.* ¶ 20.) On October 1, 2025, Petitioner was served with an "Instruction Sheet" with requirements to assist ICE in her removal. (ECF No. 8-1 ¶ 9.) Petitioner was also informed by an ICE Officer that ICE is trying to remove Petitioner to a third country. (*Id.* ¶ 11.) However, Petitioner has not been served with any paperwork or told where ICE is considering sending her. (*Id.*) Petitioner has not been provided with any other notice or information as to what ICE plans for her. (*Id.* ¶ 9; ECF No. 1 ¶ 21.) On December 10, 2025, Petitioner filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. (ECF No. 1.) Petitioner subsequently filed a motion for a TRO on December 12, 2025. (ECF No. 8.)

## II.    STANDARD OF LAW

For a TRO to issue, courts consider whether Petitioner has established: "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Petitioner must "make a showing on all four prongs" of the *Winter* test. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). In evaluating a petitioner's motion, a district court may weigh Petitioner's showings on the *Winter* elements using a sliding-scale approach. *Id.* A stronger showing on the balance of the hardships may support issuing a TRO even where the petitioner shows that there are "serious questions on the merits . . . so long as the [petitioner] also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* Simply put, Petitioner must demonstrate, "that [if] serious questions going to the merits were raised [then] the balance of hardships [must] tip[ ] sharply" in Petitioner's favor in order to succeed in a request for a TRO. *Id.* at 1134–35.

///
///
///
///
///

### III.   ANALYSIS[3]

#### A.   <u>Likelihood of Success on the Merits</u>

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A court may grant a writ of habeas corpus to a petitioner who demonstrates that her custody violates the Constitution or federal law. 28 U.S.C. § 2241(c)(3).

Petitioner seeks habeas relief on multiple bases, arguing that her detention is in violation of 8 C.F.R. § 241.13(i) and § 241.4(l) ("ICE Regulations"), and that the government's third-county removal policy is unconstitutional. Petitioner also argues her detention is in violation of the Due Process Clause. However, because the Court finds Petitioner is likely to succeed on the merits of her ICE Regulations and third-country removal claims, for purposes of expediency the Court does not analyze her Due Process claim at this juncture. (ECF No. 1; ECF No. 8 at 4[4].)

##### *i.   Violation of ICE Regulations*

Respondents have the authority to detain non-citizens with final orders of removal to effectuate deportation. *See* 8 U.S.C. § 1231; *Zadvydas v. Davis*, 533 U.S. 678, 697 (2001). But when a non-citizen, such as Petitioner, has been released from immigration detention, certain ICE regulations govern how and when the agency may revoke that release and re-detain the non-citizen. *See* 8 C.F.R. §§ 241.13(i), 241.4(l).

Under the ICE Regulations governing revocation of release, ICE may re-detain non-

---

[3] The Court finds Petitioner has met the requirements for issuing a temporary restraining order without notice. *See* Fed. R. Civ. P. 65(b). Petitioner notified Respondents via email on December 12, 2025 that she would be filing the motion. (ECF No. 8 at 7.) *See R.D.T.M. v. Wofford*, No. 1:25-CV-01141-KES-SKO, 2025 WL 2617255, at *3 (E.D. Cal. Sept. 9, 2025) (similarly finding requirements for TRO were met without notice); *Pinchi v. Noem*, No. 25-cv-05632-RML, 2025 WL 1853763, at *4 (N.D. Cal. July 4, 2025) (same).

[4] Petitioner incorporates her arguments from her habeas petition into her TRO. As such, the Court cites to the habeas petition when discussing Petitioner's arguments.

4

1  citizens if, for example, a noncitizen "violates the conditions of release" or "if, on account of
2  changed circumstances, [ICE] determines that there is a significant likelihood that the [non-
3  citizen] may be removed in the reasonably foreseeable future." 8 C.F.R. §§ 241.4(l)(1);
4  241.13(i)(2). Upon revocation of release, the noncitizen "will be notified of the reasons for the
5  revocation of his or her release," and will be given "an initial informal interview promptly after
6  his or her return to Service custody to afford the [noncitizen] an opportunity to respond to the
7  reasons for revocation stated in the notification." 8 C.F.R. §§ 241.4(l)(1), 241.13(i)(3).

8  Petitioner argues the revocation of her release violated the ICE Regulations for several
9  reasons. (ECF No. 1 at 11–12.) First, Petitioner claims the Government never provided her with
10 any notice that her Order of Supervision was revoked. (*Id.*) Second, despite being detained since
11 September 17, 2025, Petitioner contends she has not been provided with an initial interview or an
12 opportunity to respond to the purported reasons for her revocation. (*Id.* at 12.) Finally, Petitioner
13 contends the Government never sufficiently demonstrated changed circumstances rendered her
14 removal significantly likely in the reasonably foreseeable future. (*Id.*)

15 The Court finds Petitioner is likely to succeed on the merits of her claim that the
16 revocation of her release was unlawful. "ICE, like any agency, 'has the duty to follow its own
17 federal regulations.'" *Rombot v. Souza*, 296 F. Supp. 3d 383, 388 (D. Mass. 2017) (quoting
18 *Haoud v. Ashcroft*, 350 F.3d 201, 205 (1st Cir. 2003)); *see also United States ex rel. Accardi v.*
19 *Shaughnessy*, 347 U.S. 260 (1954) (reversing dismissal of habeas petition where Board of
20 Immigration Appeals failed to follow its own regulations). Here, based on the record presented,
21 Petitioner was never provided an opportunity to respond to the reasons her release was revoked
22 let alone provided notice of such reasons. Such actions clearly violate ICE Regulations. 8 C.F.R.
23 §§ 241.4(l)(1), 241.13(i)(3). As such, this factor weighs in favor of granting Petitioner's motion
24 for a temporary restraining order. *See Hoac v. Becerra*, No. 2:25-cv-01740-DC-JDP, 2025 WL
25 1993771, at *4 (E.D. Cal. July 16, 2025) ("Because there is no indication that ICE Regulations
26 were followed . . . [petitioner's] re-detainment was unlawful."); *Truong v. Noem*, No. 25-CV-
27 2597-JES-MMP, 2025 WL 2988357, at *6 (S.D. Cal. Oct. 22, 2025) (granting habeas petition
28 where the government failed to provide notice to petitioner until nearly three months after

1  detaining him and failing to conduct an informal interview).

2  *ii.  Third Country Removal*

3  Additionally, the Court finds Petitioner is likely to succeed on her claim that the Government's third-country removal program is "substantially punitive" and violates the constitutional prohibition on punitive removal practices. (ECF No. 1 at 14–15.) Third-country removals involve deportation to countries that are not identified in a final removal order and to which the non-citizen has no connection. *See* 8 U.S.C. § 1231(b)(2)(E)(vii). ICE's July 9, 2025 guidance on this issue provides that if the United States has received credible diplomatic assurances from a target third country that the non-citizen will not be persecuted or tortured, then they may be removed "*without the need for further procedures.*" *Vu v. Noem*, No. 1:25-CV-01366-KES-SKO, 2025 WL 3114341, at *8 (E.D. Cal. Nov. 6, 2025) (quoting ICE July 9, 2025 third-party removal policy) (emphasis added). Where diplomatic assurances are not secured, ICE will provide notice to the non-citizen, but removal could occur within as little as six hours and ICE "will *not* affirmatively ask whether the [non-citizen] is afraid of being removed to the country of removal." *Id.* If ICE followed this policy for Petitioner's removal, she would have no meaningful opportunity to seek relief in any court before she is removed to a third country. *See id*.

This Court has previously found that this third-country removal policy is unconstitutional and sees no reason to deviate from its prior decision. *See Nguyen v. Charles*, No. 1:25-CV-01592-TLN-CSK, 2025 WL 3492117, at *6 (E.D. Cal. Dec. 4, 2025). As such, Petitioner is likely to succeed on the merits of her third-country removal claim.

B.  <u>Irreparable Harm</u>

The Ninth Circuit has recognized that there may be numerous "irreparable harms imposed on anyone subject to immigration detention," such as "subpar medical and psychiatric care in ICE detention facilities [and] the economic burdens imposed on detainees and their families as a result of detention." *Hernandez v. Sessions,* 872 F.3d 976, 999 (9th Cir. 2017). Moreover, for Petitioner, she has lost access to a family member who relies on her, particularly her daughter who serves in the U.S. Navy as a nuclear mechanic. (ECF No. 1 at ; ECF No. 8 at 5.) Even if

1    this was not enough, "[i]t is well established that the deprivation of constitutional rights

2    'unquestionably constitutes irreparable injury.'" *Hernandez*, 872 F.3d at 994 (quoting *Melendres*

3    *v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). "When an alleged deprivation of a constitutional

4    right is involved, most courts hold that no further showing of irreparable injury is necessary."

5    *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005). In addition to harms imposed

6    by lengthy immigration detention, Petitioner has shown she is likely to succeed on the merits of

7    her constitutional claim. Thus, the Court finds Petitioner has likely suffered irreparable harm.

           C.        Balance of Equities and Public Interest

9    As to the final two *Winter* factors, "[w]hen the government is a party, the analysis of the

10   balance of the hardships and the public interest merge." *Nat'l Urban League v. Ross*, 484 F.

11   Supp. 3d 802, 807 (N.D. Cal. 2020) (citing *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092

12   (9th Cir. 2014)). Respondents "cannot reasonably assert that [they are] harmed in any legally

13   cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. I.N.S.*, 753

14   F.2d 719, 727 (9th Cir. 1983); *see also Rodriguez v. Robbins*, 715 F. 3d 1127, 1145 (9th Cir.

15   2013) ("[The government] cannot suffer harm from an injunction that merely ends an unlawful

16   practice[.]"). The public also has a strong interest in ensuring its government follows the law and

17   the Ninth Circuit has recognized that the "costs to the public of immigration detention are

18   staggering[.]" *Hernandez*, 872 F.3d at 996; *see also Index Newspapers LLC v. U.S. Marshals

19   Serv.*, 977 F.3d 817, 838 (9th Cir. 2020) ("It is always in the public interest to prevent the

20   violation of a party's constitutional rights.")

21   As discussed above, Petitioner has shown she is likely to succeed in proving that

22   Respondents have violated federal laws and her constitutional rights. Additionally, Respondents

23   are not harmed by their sworn duty to follow the law. *See Zepeda*, 753 F.2d at 727. Thus, the

24   balance of equities and public interest factors weigh in Petitioner's favor.

25   **IV.    CONCLUSION**

26   Accordingly, IT IS HEREBY ORDERED:

27   1. Petitioner's Motion for a Temporary Restraining Order (ECF No. 8) is GRANTED.

28   2. The bond requirement of Federal Rule of Civil Procedure 65(c) is waived. Courts

1   regularly waive security in cases like this one. *See Diaz v. Brewer*, 656 F.3d 1008,
2   1015 (9th Cir. 2011).

3.  To return to the status quo ante, Respondents must IMMEDIATELY RELEASE Petitioner Veronica Villegas Oliveras under the same conditions she was released previously on her February 24, 2017 Order of Supervision. *See Yang v. Kaiser*, No. 2:25-cv-02205-DAD-AC, 2025 WL 2791778, at *11 (E.D. Cal. Aug. 20, 2025) (status quo ante is "the last uncontested status which preceded the pending controversy.").

4.  Respondents are ENJOINED and RESTRAINED from re-detaining Petitioner until they follow all procedures set forth in 8 C.F.R §§ 241.4(l), 241.13(i) and any other applicable statutory and regulatory procedures.

5.  Respondents are further ordered to SHOW CAUSE why this Court should not convert this temporary restraining order into a preliminary injunction requiring Respondents to continue to abide by this Court's order. Respondents shall file responsive papers by **Friday, December 19, 2025, by 5 p.m.** Petitioner may file a reply, if any, by **Wednesday, December 24, 2025, by 12 p.m.** If the parties agree upon a less demanding briefing schedule, the Court will consider the parties' proposal. The parties shall indicate in their briefing **whether they request a hearing**. Fed. R. Civ. P. 65(b)(3). The hearing currently set for January 22, 2026 at 2 p.m. in Courtroom 2 was improperly noticed under Local Rule 230(b) and is hereby VACATED. (ECF No. 8.)

6.  Petitioner is ordered to serve this Temporary Restraining Order and Order to Show Cause and all supporting pleadings and papers on **Respondents by 8:00 p.m. on December 15, 2025**. Petitioner shall file proof of such service no later than **9:00 a.m. on December 16, 2025.**

7.  Respondents are hereby notified of their right to apply to the Court for modification or dissolution of the Temporary Restraining Order on two days' notice or such shorter notice as the Court may allow. Fed. R. Civ. P. 65(b)(4).

28  //

8

1  IT IS SO ORDERED.

2  Date: December 15, 2025

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE